AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH TWO ACCOUNTS<br>STORED AT PREMISES CONTROLLED BY TWITTER,<br>INC. PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION<br>OF VIOLATION OF 18 U.S.C. § 1752 | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 21-sc-271 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, hereby incorporated by reference.

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, hereby incorporated by reference.

The basis of this search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1752(a)(1) and (2); | (Unlawful Entry) |
| 18 U.S.C. § 875 (c); | (Interstate Communication of Threats) |
| 40 U.S.C. § 5104(e)(2)(C), (D), (E) and<br>(G) | (Unlawful Activities) |

The application is based on these facts:

See attached affidavit.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Sean Millet, Special Agent - FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____Telephone_____ *(specify reliable electronic means).*

Date: \_\_\_\_01/25/2021\_\_\_\_

_____
*Judge's signature*

City and state: \_\_\_Washington, D.C.\_\_\_

G. Michael Harvey, United States Magistrate Judge
_____
*Printed name and title*

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.  21-sc-271 |
| INFORMATION ASSOCIATED WITH TWO ACCOUNTS | ) | |
| STORED AT PREMISES CONTROLLED BY TWITTER, | ) | |
| INC. PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION | ) | |
| OF VIOLATION OF 18 U.S.C. § 1752 | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Northern_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, hereby incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, hereby incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____February 8, 2021_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____G. Michael Harvey, United States Magistrate Judge_____ .
                                                                                          *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      ___01/25/2021_____

City and state:      ___Washington, D.C._____                    ___G. Michael Harvey, United States Magistrate Judge___
                                                                                                              *Judge's signature*

                                                                              G. Michael Harvey, United States Magistrate Judge
                                                                                                              *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br> 21-sc-271 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## **ATTACHMENT A**

*Accounts to be searched*

This warrant applies to information which is associated with the TWITTER account(s) identified as @realwallnow @DamonBeckley and which is stored at premises owned, maintained, controlled, or operated by Twitter, Inc., a company that accepts service of legal process at 1355 Market Street, Suite 900 San Francisco, CA 94103.

**ATTACHMENT B**

**Particular Things to be Seized and Procedures
to Facilitate Execution of the Warrant**

I.      **Information to be disclosed by TWITTER ("PROVIDER") to facilitate
        execution of the warrant**

To the extent that the information described in Attachment A is within the possession, custody, or control of PROVIDER, including any records that have been deleted but are still available to PROVIDER or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), PROVIDER is required to disclose the following information to the government corresponding to each account or identifier ("Account") listed in Attachment A:

For the time period FROM NOVEMBER 1st 2020 TO THE PRESENT**.** The contents of any available messages or other communication associated with the Account (including, but not limited to, messages, attachments, draft messages, "tweets", "retweets", "tweets" that are "favorited", direct messages, chats, video calling history, accounts "followed", accounts "following", discussions, recordings, images, or communications of any kind sent to and from the Account, including stored or preserved copies thereof) and related transactional records for all PROVIDER services used by an Account subscriber/user, including the source and destination addresses and all Internet Protocol ("IP") addresses associated with each message or other communication, the date and time at which each message or other communication was sent, and the size and length of each message or other communication;

      a.   For the time period FROM NOVEMBER 1, 2020 TO THE PRESENT. The contents of any available messages or other communication associated with the Account (including, but not limited to, messages, attachments, draft messages, "tweets",

"retweets", "tweets" that are "favorited", direct messages, chats, video calling history, accounts "followed", accounts "following", discussions, recordings, images, or communications of any kind sent to and from the Account, including stored or preserved copies thereof) and related transactional records for all PROVIDER services used by an Account subscriber/user, including the source and destination addresses and all Internet Protocol ("IP") addresses associated with each message or other communication, the date and time at which each message or other communication was sent, and the size and length of each message or other communication;

b. For the time period FROM NOVEMBER 1, 2020 TO THE PRESENT: The contents of any available messages or other communication associated with the Accounts (including, but not limited to, messages, attachments, draft messages, "tweets", "retweets", "tweets" that are "favorited", direct messages, chats, video calling history, accounts "followed", accounts "following", discussions, recordings, images, or communications of any kind sent to and from the Account, including stored or preserved copies thereof) and related transactional records for all PROVIDER services used by an Account subscriber/user, including the source and destination addresses and all Internet Protocol ("IP") addresses associated with each message or other communication, the date and time at which each message or other communication was sent, and the size and length of each message or other communication;

2

c.  For the time period FROM DECEMBER 1st 2020 TO THE PRESENT: All photos and videos uploaded by the Account and all photos or videos uploaded in which the Account has been "tagged", including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

d.  Basic subscriber records and login history, including all records or other information regarding the identification of the Account, to include full name, physical address, telephone numbers, birthdate, security questions and passwords, and other personal identifying information, records of session times and durations, the date on which the Account was created, the length of service, types of services utilized by the Account, the IP address used to register the Account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, means and source of payment (including any credit or bank account number), and any account(s) linked by machine cookies (meaning all user identification numbers ("user IDs") that logged into Twitter by the same machine as the Account;

e.  For the time period FROM NOVEMBER 1st 2020 TO THE PRESENT:  All records or other information related to the Account, including address books, contact lists, "Followers", other accounts that the Account is "Following", calendar data, and files; profile information; "News Feed" information; "Tweets"; "Retweets", "tweets" that are "favorited", direct messages,  Notes; groups and networks of which the Account is

3

a member; future and past event postings; rejected contact requests and blocked users; status updates (including relationship status updates); comments; including all Twitter posts and all non-Twitter webpages and content that the user has posted, searches performed by the Account; privacy settings, including privacy settings for individual "Tweets" and activities; information about the Account's access and use of Twitter applications

f.  For the time period FROM NOVEMBER 1st 2020 TO THE PRESENT: All "check ins" and other location information;

g.  For the time period FROM NOVEMBER 1st 2020 TO THE PRESENT:  All records pertaining to communications between PROVIDER and any person regarding the Account, including contacts with support services and records of actions taken;

h.  All records pertaining to devices associated with the Account and software used to create and access the Account, including device serial numbers, instrument numbers, model types/numbers, International Mobile Equipment Identities ("IMEI"), Mobile Equipment Identifiers ("MEID"), Global Unique Identifiers ("GUID"), Electronic Serial Numbers ("ESN"), Android Device IDs, phone numbers, Media Access Control ("MAC") addresses, operating system information, browser information, mobile network information, information regarding cookies and similar technologies, and any other unique identifiers that would assist in identifying any such device(s), including unique application numbers and push notification tokens associated with the Account

4

(including Apple Push Notifications ("APN"), Google Cloud Messaging ("GCM"), Microsoft Push Notification Service ("MPNS"), Windows Push Notification Service ("WNS"), Amazon Device Messaging ("ADM"), Firebase Cloud Messaging ("FCM"), and Baidu Cloud Push);

i.  All information held by PROVIDER related to the location and location history of the user(s) of the Account, including geographic locations associated with the Account (including those collected for non-PROVIDER based applications), IP addresses, Global Positioning System ("GPS") information, and information pertaining to nearby devices, Wi-Fi access points, and cell towers; and

j.  Information about any complaint, alert, or other indication of malware, fraud, or terms of service violation related to the Account or associated user(s), including any memoranda, correspondence, investigation files, or records of meetings or discussions about the Account or associated user(s) (but not including confidential communications with legal counsel).

Within **14 DAYS** of the issuance of this warrant, PROVIDER shall deliver the information set forth above via United States mail, courier, or e-mail to the following:

**SPECIAL AGENT SEAN MILLETT/ FEDERAL BUREAU OF INVESTIGATION: email address spmillett@fbi.gov**

5

## II.     Information to be seized by the government

All information described above in Section I that constitutes **fruits, contraband, evidence and instrumentalities** of violations of 18 U.S.C. §§ 1752(a)(1) and (2) (Unlawful Entry), 18 U.S.C. §§ 875 (c) (Interstate Communication of Threats) and 40 U.S.C. § 5104(e)(2)(C), (D), (E) and (G) (Unlawful Activities).   as described in the affidavit submitted in support of this Warrant, including, for each Account, information pertaining to the following matters:

(a) Information that constitutes evidence of the identification or location of the user(s) of the Accounts;

(b) Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

(c) Information that constitutes evidence indicating the Account user's state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation;

(d) Information that constitutes evidence concerning how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Account user;

6

(e) Information that constitutes evidence concerning the believed user of these accounts, DAMON MICHAEL BECKLEY, as an individual who was inside the U.S. Capitol building on January 6, 2021, without authority and any information related to any threatening communications BECKLEY may have sent using the accounts either before, during, or after the events of January 6, 2021. .

(f) Records that may indicate preparatory steps taken in furtherance of the events of January 6, 2021 at the U.S. Capitol on the part of DAMON BECKLEY, individuals BECKLEY was communicating with, or other communications used to issue threats and/or plan and execute violent acts.

7

### III.    Government procedures for warrant execution

The United States government will conduct a search of the information produced by the PROVIDER and determine which information is within the scope of the information to be seized specified in Section II.  That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from the PROVIDER that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

## <u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)</u>

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by _____ ("PROVIDER"), and my title is _____. I am a custodian of records for PROVIDER, and I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of PROVIDER.  The attached records consist of:

_____
[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]

I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and

b.      such records were generated by PROVIDER's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.


_____       _____
Date                                 Signature

1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH TWO ACCOUNTS STORED AT PREMISES CONTROLLED BY TWITTER, INC. PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. § 1752** | SC No. _____**21-sc-271**_____  <br><br> **Filed Under Seal** |

*Reference:*      *USAO Ref. # 2021R0185; Subject Accounts:* @realwallnow and @DamonBeckley

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Sean Millett, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information which is associated with TWO account[s] – that is, @realwallnow and @DamonBeckley – which is stored at premises controlled by TWITTER INC, ("PROVIDER"), an electronic communications services provider and/or remote computing services provider which is headquartered at / which accepts service at 1355 Market Street, Suite 900 San Francisco, CA 94103. The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require PROVIDER to disclose to the government

9

copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI). I have been in this position since March 2018.  I am currently assigned to the Counter-Intelligence Division of the Washington Field Office of the FBI.  My primary responsibilities include conducting and assisting with investigations involving counterintelligence, economic espionage, and other related violations of federal criminal law.  I am currently tasked with investigating criminal activity that occurred on or around January 6, 2021, in the U.S. Capitol, its grounds, and in its vicinity. Prior to becoming a Special Agent, I was a Staff Operation Specialist at the Terrorist Screening Center for the FBI, assisting with counterterrorism matters and analysis from July 2012 until March 2018.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant.  It does not set forth all of my knowledge, or the knowledge of others, about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 18 U.S.C. §§ 1752(a)(1) and (2) (Unlawful Entry), 18 U.S.C. §§ 875 (c) (Interstate Communication of

10

Threats) and 40 U.S.C. § 5104(e)(2)(C), (D), (E) and (G) (Unlawful Activities) have been committed by DAMON MICHAEL BECKLEY (BECKLEY). There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment B.

5.      This Court has jurisdiction to issue the requested warrant because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).  As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC.  *See* 18 U.S.C. § 3237. The statutes setting forth the federal offenses under investigation, namely 18 U.S.C. §§ 1752(a)(1) and (2) (Unlawful Entry), 18 U.S.C. §§ 875 (c) (Interstate Communication of Threats) and 40 U.S.C. § 5104(e)(2)(C), (D), (E) and (G) (Unlawful Activities)

## PROBABLE CAUSE

6.      Your affiant identified DAMON MICHAEL BECKLEY as an individual who was inside the U.S. Capitol building on January 6, 2021, without authority.  The FBI obtained at least two videos and one screenshot showing BECKLEY on the grounds of the U.S. Capitol on that date.

11

7.      One video appears to have been recorded using a cellphone or other handheld device that was taken during the riots in the U.S. Capitol on January 6, 2021.  The recording shows scores of individuals climbing up steps and through scaffolding on the exterior of the Capitol.  The video shows one man who self identifies as Damon Michael BECKLEY. BECKLEY appears to be wearing a dark jacket with a lighter grey hood with the hood down, along with a dark colored hat, and baseball cap.  BECKLEY audibly states the following in the video:

> BECKLEY: "Vice President Pence, my name is Damon Michael BECKLEY and I do not appreciate one bit this situation you caused here sir. All this violence and everything was 100 percent unnecessary, okay. Now we've got a girl that's shot, she's dead, laying on the ground in there. We're all crying like we can't save her and you her blood is on your hands Mike Pence
>
> UNSUB: say you saw someone get shot
>
> BECKLEY: they got they shot her right through the neck
>
> UNSUB: i heard that too but i thought it was a rumor
>
> BECKLEY: yeah with a service weapon
>
> BECKLEY: we're not putting up with this tyrannical rule. if we got to come back here and start a revolution and take all of these traitors out, which is what should be done, then we will" (end transcription).

8.      The second video also appears to have been recorded using a cellphone or handheld device.  During the recording, it appears that the individual recording the video briefly turns the camera around to record the crowd inside the Capitol, at which time BECKLEY is shown in the recording.  BECKLEY appears to be wearing a dark jacket with a lighter grey hood with the hood up, along with a dark colored hat, and baseball cap.

9.      I have identified BECKLEY as the person depicted in the photograph and videos in the following ways.  First, on January 7, 2021, Witness 1, an individual with knowledge of BECKLEY's social media activities, contacted the FBI and reported that BECKLEY had posted a photograph of himself inside the Capitol building on January 6, 2021. The affiant obtained several screenshots from Witness 1, at least one of which appeared to depict BECKLEY inside the Capitol building. Second, investigators obtained the Kentucky Department of Motor Vehicle (DMV) photograph of BECKLEY and compared it to video and photograph described herein.  The DMV photograph of BECKLEY appears to your affiant to match the individual shown in the videos and screenshots.

10.      One of the screenshots provided by Witness 1 contained Twitter posts by @DamonBeckley and @realwallnow. Witness 1 claimed those accounts belong to BECKLEY. Screenshots obtained via internet searches by the affiant found Twitter accounts with the same usernames. The avatar picture for the twitter account @realwallnow found by the affiant via internet searches matched the avatar picture for the twitter account @realwallnow provided by witness 1. While @DamonBeckley did not have an avatar picture, an account description was listed in a screenshot witness 1 provided that states "50. Husband Dad Nationalist Will fight for my rights, so don't try to take them. Proud Trump supporter. Searches by the affiant found twitter profile @DamonBeckley, with a description 50. Husband dad Nationalist Will fight for my rights, so don't try to take them. Proud Trump supporter. These profile descriptions matched.

11.     An article on WDRB.com dated January 2nd, 2021, described a protest in front of

Senator Mitch McConnell's home in Louisville, Kentucky that followed the vandalizing of

McConnell's home. The news article described one of the protest's organizers as "Damon

Beckley" with "DC Under Siege." The article said that BECKLEY created an event on

Facebook.  A screenshot of the video posted along with the news article showed a man with a

loudspeaker that appears to your affiant to resemble BECKLEY.

12.     Searches by the affiant uncovered screenshots for Facebook accounts DC Under

Siege.100 and Damon.Beckley.9, however the affiant was not able to view specific posts for

either profile. Screenshots provided by Witness 1 depicted two Facebook posts by a profile name

"Damon Beckley", which included a profile picture that appeared to the affiant to resemble

BECKLEY. One post, with a timestamp of 4h, read: "Rebellion in DC Pray like you never have

in your life. The congressional Police killed two people while I was in the building and pointed a

9mm in my face for 3 minutes while I tried to get them to stand down an leave the building. This

is so messed up. So messed up." A second post, timestamped "1d" read "DC UNDER SIEGE

WILL BE IN DC TOMORROW!!! 1776." Attached underneath the second post is a photo that

stated "Be a part of History! FIGHT FOR TRUMP" Based upon the first post, the affiant

believes the second post was posted January 5th, the day before the Capitol Riot.

13.     At least one screenshot provided by Witness 1 also revealed posts to PROVIDER

account Damon Beckley where PROVIDER account Damon Beckley mentions being inside the

U.S. Capitol. An additional screenshot from Witness 1 depicts another undated Facebook

14

comment by PROVIDER account Damon Beckley which states, "We were shoved in by Antifa" responding to  another Facebook user's comment, "You should not have gone in that building dude." The second video mentioned above does not appear to depict BECKLEY attempting to depart the U.S. Capitol or being physically moved in any way by other individuals.

14.     Additional internet searches by the affiant for "DC Under Siege" revealed a Parler.com account that was associated with "Damon Beckley." The Parler.com account named Damon Beckley had a post from three weeks prior January 8, 2021, the date the screenshot was taken by the affiant, that stated "I just joined Parler! Looking forward to meeting everyone here." Approximately two weeks prior to January 8, 2021, at the U.S. Capitol, the Parler.com account named Damon Beckley made a comment on an article that was posted on Parler.com account Damon Beckley titled "The $600 COVID Stimulus is A Slap To The Face of Hurting Americans." Underneath the article, Parler.com account named Damon Beckley @DCunderSiege commented: "It's not a slap in the face, it's a DARE for hardened patriots to Charlie Hebdo these traitors and end their audacious tyranny."

15.     The Affiant believes this comment to be a reference to Charlie Hebdo, a French Satirical Weekly Magazine that was the target of a terrorist attack in 2015 in Paris, France and during which 12 people were killed. Al-Qaeda in the Arabian Peninsula (AQAP) claimed responsibility for this attack.  AQAP justified their attack on Charlie Hebdo as retaliation for cartoons that Charlie Hebdo published that depicted controversial images of the Prophet Muhammad. Affiant is aware of the Charlie Hebdo attack from Affiant's knowledge and

15

experience working counterterrorism matters as a Staff Operations Specialist for the FBI from 2012 to 2018.

16.     Damon Beckley is the subject of a news article dated January 14, 2021, that appeared on WDRB.com, URL https://www.wdrb.com/news/after-entering-us-capitol-during-riot-man-from-louisville-now-in-hiding/article_03f8ea4e-56e1-11eb-834a-fff29ce32dbf.html, and titled "After entering US Capitol during riot, man from Louisville now in hiding."  This article reports that BECKLEY agreed to "speak on the record" and stated "Nothing's going to be absolved through violence; you know, it's not going to do anybody any good,"  Also according to the WDRB article, BECKLEY allegedly deleted Facebook and removed the SIM card from his phone out of fear the FBI could soon arrest and charge him."

17.     On January 11, 2021, PROVIDER was served with a preservation letter under 18 U.S.C. § 2703(f) related to @Damon Beckley and @realwallnow.

**BACKGROUND CONCERNING PROVIDER'S ACCOUNTS**

18.     PROVIDER is the provider of the internet-based account(s) identified by usernames @Damon Beckley and @realwallnow

19.     PROVIDER owns and operates a free-access social-networking website of the same name that can be accessed at http://www.twitter.com ("Twitter"). PROVIDER allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and location information. PROVIDER also permits users create and read 140-

character messages called "tweets," and to restrict their "tweets" to individuals whom they approve. These features are described in more detail below.

20.      Upon creating a Twitter account, a Twitter user must create a unique Twitter username and an account password, and the user may also select a different name of 20 characters or fewer to identify his or her Twitter account. The Twitter user may also change this username, password, and name without having to open a new Twitter account.

21.      PROVIDER asks users to provide basic identity and contact information, either during the registration process or thereafter. This information may include the user's full name, e-mail addresses, physical address (including city, state, and zip code), date of birth, gender, hometown, occupation, and other personal identifiers. For each user, PROVIDER may retain information about the date and time at which the user's profile was created, the date and time at which the account was created, and the Internet Protocol ("IP") address at the time of sign-up. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access a given Twitter account.

22.      A Twitter user can post a personal photograph or image (also known as an "avatar") to his or her profile, and can also change the profile background or theme for his or her account page. In addition, Twitter users can post "bios" of 160 characters or fewer to their profile pages.

17

23.     PROVIDER also keeps IP logs for each user. These logs contain information about the user's logins to PROVIDER including, for each access, the IP address assigned to the user and the date stamp at the time the user accessed his or her profile.

24.     As discussed above, Twitter users can use their Twitter accounts to post "tweets" of 140 characters or fewer. Each tweet includes a timestamp that displays when the tweet was posted to Twitter. Twitter users can also "favorite," "retweet," or reply to the tweets of other users. In addition, when a tweet includes a Twitter username, often preceded by the @ sign, PROVIDER designates that tweet a "mention" of the identified user. In the "Connect" tab for each account, PROVIDER provides the user with a list of other users who have "favorited" or "retweeted" the user's own tweets, as well as a list of all tweets that include the user's username (i.e., a list of all "mentions" and "replies" for that username).

25.     Twitter users can include photographs or images in their tweets. Each Twitter account also is provided a user gallery that includes images that the user has shared on Twitter, including images uploaded by other services.

26.     Twitter users can also opt to include location data in their tweets, which will reveal the users' locations at the time they post each tweet. This "tweet with location" function is off by default, so Twitter users must opt in to the service. In addition, Twitter users may delete their past location data.

27.     When Twitter users want to post a tweet that includes a link to a website, they can use Twitter's link service, which converts the longer website link into a shortened link that begins with http://t.co. This link service measures how many times a link has been clicked.

28.     A Twitter user can "follow" other Twitter users, which means subscribing to those users' tweets and site updates. Each user profile page includes a list of the people who are following that user (i.e., the user's "followers" list) and a list of people whom that user follows (i.e., the user's "following" list). Twitter users can "unfollow" users whom they previously followed, and they can also adjust the privacy settings for their profile so that their tweets are visible only to the people whom they approve, rather than to the public (which is the default setting). A Twitter user can also group other Twitter users into "lists" that display on the right side of the user's home page on Twitter. PROVIDER also provides users with a list of "Who to Follow," which includes a few recommendations of Twitter accounts that the user may find interesting, based on the types of accounts that the user is already following and who those people follow.

29.     In addition to posting tweets, a Twitter user can also send Direct Messages (DMs) to one of his or her followers. These messages are typically visible only to the sender and the recipient, and both the sender and the recipient have the power to delete the message from the inboxes of both users. As of January 2021, Twitter displayed only the last 100 DMs for a particular user, but older DMs are stored on Twitter's database.

19

30.     Twitter users can configure the settings for their Twitter accounts in numerous ways. For example, a Twitter user can configure his or her Twitter account to send updates to the user's mobile phone, and the user can also set up a "sleep time" during which Twitter updates will not be sent to the user's phone.

31.     Twitter includes a search function that enables its users to search all public tweets for keywords, usernames, or subject, among other things. A Twitter user may save up to 25 past searches.

32.     Twitter users can connect their Twitter accounts to third-party websites and applications, which may grant these websites and applications access to the users' public Twitter profiles.

33.     If a Twitter user does not want to interact with another user on Twitter, the first user can "block" the second user from following his or her account.

34.     In some cases, Twitter users may communicate directly with Twitter about issues relating to their account, such as technical problems or complaints. Social-networking providers like Twitter typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. Twitter may also suspend a particular user for breaching Twitter's terms of service, during which time the Twitter user will be prevented from using Twitter's services.

35.     Based on my training and experience, I know that providers such as PROVIDER use cookies and similar technologies to track users visiting PROVIDER's webpages and using its products and services.  Basically, a "cookie" is a small file containing a string of characters that a website attempts to place onto a user's computer.  When that computer visits again, the website will recognize the cookie and thereby identify the same user who visited before.  This sort of technology can be used to track users across multiple websites and online services belonging to PROVIDER.  More sophisticated cookie technology can be used to identify users across devices and web browsers.  From training and experience, I know that cookies and similar technology used by providers such as PROVIDER may constitute evidence of the criminal activity under investigation.  By linking various accounts, devices, and online activity to the same user or users, cookies and linked information can help identify who was using a PROVIDER account and determine the scope of criminal activity.

36.     Based on my training and experience, I know that PROVIDER maintains records that can link different PROVIDER accounts to one another, by virtue of common identifiers, such as common e-mail addresses, common telephone numbers, common device identifiers, common computer cookies, and common names or addresses, that can show a single person, or single group of persons, used multiple PROVIDER accounts.  Based on my training and experience, I also know that evidence concerning the identity of such linked accounts can be useful evidence in identifying the person or persons who have used a particular PROVIDER account.

37.     Based on my training and experience, I know that subscribers can communicate directly with PROVIDER about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Providers such as PROVIDER typically retain records about such communications, including records of contacts between the user and the PROVIDER 's support services, as well records of any actions taken by the PROVIDER or user as a result of the communications.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

38.     In summary, based on my training and experience in this context, I believe that the computers of PROVIDER are likely to contain user-generated content such as stored electronic communications (including retrieved and unretrieved messages for PROVIDER subscribers), as well as PROVIDER-generated information about its subscribers and their use of PROVIDER services and other online services.  In my training and experience, all of that information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.  In fact, even if subscribers provide PROVIDER with false information about their identities, that false information often nevertheless provides clues to their identities, locations, or illicit activities.

39.     As explained above, information stored in connection with a Twitter account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the investigating authorities to establish and prove each element

22

of the offense or, alternatively, to exclude the innocent from further suspicion.  From my training and experience, a Twitter user's IP log, stored electronic communications, and other data retained by PROVIDER, can indicate who has used or controlled the Twitter account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and "tagged" photos (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the Twitter account at a relevant time.  Further, Twitter account activity can show how and when the account was accessed or used.  For example, as described above, PROVIDER logs the IP addresses from which Twitter users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Twitter access, use, and events relating to the crime under investigation.  Additionally, PROVIDER builds geo-location into some of its Twitter services.  Geo-location allows, for example, users to "tag" their location in posts and Twitter "followers" to locate each other.  This geographic and timeline information may tend to either inculpate or exculpate the Twitter account user.  Last, Twitter account activity may provide relevant insight into the Twitter account user's state of mind as it relates to the offense under investigation.  For example, information on the Twitter account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or

23

consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).[1]

40.     Based on my training and experience, I know that evidence of who controlled, used, and/or created a PROVIDER account may be found within the user-generated content created or stored by the PROVIDER subscriber.  This type of evidence includes, for example, personal correspondence, personal photographs, purchase receipts, contact information, travel itineraries, and other content that can be uniquely connected to a specific, identifiable person or group.  In addition, based on my training and experience, I know that this type of user-generated content can provide crucial identification evidence, whether or not it was generated close in time to the offenses under investigation.  This is true for at least two reasons.  First, people that commit crimes involving electronic accounts (*e.g.*, e-mail accounts) typically try to hide their identities, and many people are more disciplined in that regard right before (and right after) committing a particular crime.  Second, earlier-generated content may be quite valuable, because criminals typically improve their tradecraft over time.  That is to say, criminals typically learn how to better separate

---

[1] At times, social media providers such as PROVIDER can and do change the details and functionality of the services they offer.  While the information in this section is true and accurate to the best of my knowledge and belief, I have not specifically reviewed every detail of PROVIDER's services in connection with submitting this application for a search warrant. Instead, I rely upon my training and experience, and the training and experience of others, to set forth the foregoing description for the Court.

their personal activity from their criminal activity, and they typically become more disciplined about maintaining that separation, as they become more experienced.  Finally, because e-mail accounts and similar PROVIDER accounts do not typically change hands on a frequent basis, identification evidence from one period can still be relevant to establishing the identity of the account user during a different, and even far removed, period of time.

<u>**REQUEST TO SUBMIT WARRANT BY TELEPHONE
OR OTHER RELIABLE ELECTRONIC MEANS**</u>

41.     I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in connection with this Application for a Search Warrant. I submit that Assistant U.S. Attorney AUSA Peter Lallas, an attorney for the United States, is capable of identifying my voice and telephone number for the Court.

## **CONCLUSION**

42.      Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on PROVIDER, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

_____

Sean Millett
Special Agent
Federal Bureau of Investigation

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on this 25th day of January 2021.

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE